UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                          CASE No. 1:08-cr-286

                                          HON. ROBERT J. JONKER

ANTONIO NORMAN,

    Defendant.

_____/

## **OPINION REGARDING DEFENDANT NORMAN'S FIRST STEP ACT MOTION**

### **INTRODUCTION**

Defendant Norman pleaded guilty to a Section 841(b)(1)(A) drug offense involving at least 50 grams of crack cocaine in February of 2009. The government had a Section 851 Notice on file reporting a prior felony drug offense conviction. At the time of Defendant Norman's sentencing in May of 2009, this exposed him to a mandatory minimum sentence of twenty years in prison. He was thirty-one years old at the time.

The matter before the Court is Defendant Norman's motion for modification or reduction in sentence under the newly enacted First Step Act. (ECF No. 55). The Court appointed counsel to assist Defendant Norman with his motion, and both sides have filed briefs. The government responds that the First Step Act reduces the statutory mandatory minimum applicable to Defendant Norman, but that it does not affect Defendant's maximum sentence or his guideline range. And because Defendant Norman has already received a below-guideline sentence, the government suggests no further reduction is called for. (ECF No. 59). The defense replies by averring that

the First Step Act provides a free-standing remedy and so the Court should conduct a plenary resentencing. It contends that in such a proceeding, the Court may consider several other matters and apply other changes in the law that may favor the Defendant. For example, the defense contends the Court should determine whether the predicate offense in the government's Section 851 notice would qualify as a predicate offense today. (ECF No. 60). The government opposes any plenary proceeding.

The Court sees no need for a hearing on the fully briefed issues. Defendant Norman is eligible for relief under the First Step Act, but the Court does not believe a plenary resentencing is necessary or proper. Once eligibility is established, however, everything else goes into the discretionary mix to inform the Court's decision. The Court discerns a number of considerations that justify a reduced sentence under the First Step Act in this case. The Court can and does exercise its discretion under the First Step Act to reduce Defendant Norman's sentence as provided in this Opinion and accompanying Order.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Offense Conduct*

In April 2008 a confidential informant (CI) told a detective with the Kalamazoo Valley Enforcement Team (KVET) that large quantities of crack cocaine could be purchased from an individual later identified as Defendant Norman. KVET detectives proceeded to conduct four controlled buys from Defendant Norman between September 2 and October 21, 2008. Defendant Norman was arrested after the last controlled purchase on October 21, 2008. On that date he provided 59.39 grams of crack cocaine to the CI. KVET detectives subsequently secured and executed a search warrant at Defendant Norman's residence. There they seized ammunition, drug paraphernalia, and $5,488 in currency.

The CI provided a written affidavit detailing that he had purchased more than 2 kilograms of crack cocaine from Defendant Norman over the previous year, however ultimately only 103.18 grams of crack cocaine was attributed to Defendant Norman.

### 2.     *Charge & Plea*

Defendant Norman was charged in a six-count indictment on November 19, 2008, with one count of conspiracy to distribute fifty grams or more of crack cocaine (Count 1); four counts of distribution of five grams or more of crack cocaine (Counts 2 through 5); and one count of distribution of 50 grams or more of crack cocaine (Count 6). (ECF No. 1).[1] On January 16, 2009, the government filed an information and notice of prior drug conviction. (ECF No. 26). The filing notified the defense and the Court of the Defendant's December 9, 1998 conviction for Delivery of a Controlled Substance. The effect of this notice was to increase the range of statutory penalties then applicable to Defendant Norman from ten years to life imprisonment to twenty years to life imprisonment. *See* 21 U.S.C. §§ 841(b)(1)(A)(iii); 851 (2009).

On February 2, 2009, Defendant Norman pleaded guilty to Count 1 (conspiracy to distribute 50 grams or more of crack cocaine). (ECF No. 30). Under the terms of a written plea agreement, the government agreed to move to dismiss the remaining charges in the indictment at sentencing, not to oppose Defendant's request for a reduction in his offense level for acceptance

---

[1] Defendant Norman's girlfriend, Satrina Anderson, was charged under Counts 1, 4, and 6 of the indictment for her part in the drug trafficking organization. Under the terms of a written plea agreement, the government agreed to request those charges be dismissed in exchange for Ms. Anderson's plea to a charge in state court. The government subsequently sought to dismiss the charges in the indictment as to Ms. Anderson (ECF No. 29) and the Court granted the motion on February 2, 2009. (ECF No. 33).

of responsibility, and not to file an additional Section 851 notice alleging that the defendant had more than one prior felony drug conviction.[2]

### 3.     PSR & Sentencing

The Final Presentence Report (PSR) prepared by the probation officer found that Defendant Norman was responsible for 103.18 grams of crack cocaine. The quantity of narcotics triggered an initial base offense level of 30. (PSR ¶ 37). Two levels were added for Defendant's role as an organizer in the offense, resulting in an adjusted offense level of 32. (PSR ¶¶ 40, 42). After adjusting downward for acceptance of responsibility, the total drug offense level was 29. (PSR ¶ 45).

The PSR determined, however, that Defendant Norman qualified as a career offender because he committed the offense of conviction after sustaining two prior felony convictions for controlled substance offenses. Since the statutory maximum penalty for the offense of conviction was life under Section 841(b)(1)(A)(iii), the guidelines called for a career offender offense level of 34, after adjusting for acceptance of responsibility. *See* U.S.S.G. § 4B1.1(b)(A). Level 34 being higher than the offense level calculated under Section 2D1.1, it took precedence and became Defendant Norman's total offense level. (PSR ¶ 49).

The officer then scored Defendant's criminal history at seven points, resulting in a criminal history category of IV. Because Defendant was a career offender, however, his criminal history was elevated to Category VI. (PSR ¶ 70). The guideline range for a total offense level of 34 and criminal history category of VI was 262 to 327 months. (PSR ¶ 106).[3]   At the May 14, 2009

---

[2] At the time, a defendant convicted under Section 841(b)(1)(A)(iii) with two or more prior felony drug convictions was subject to a mandatory term of life imprisonment.
[3] Defendant Norman's career offender status raised his guidelines above the statutory minimum penalty. Without the career offender status, Defendant Norman's offense level of 29 and criminal history category of IV would have resulted in a guideline range on the chart of 121 to 151 months,

4

sentencing the Court granted a defense motion to depart, finding the guideline range as calculated overstated Defendant's criminal history. The Court departed one level, resulting in a guideline range on the chart of 235 to 293 months. The Court then imposed the mandatory minimum sentence of 240 months imprisonment, followed by ten years of supervised release. Judgment entered on May 15, 2009. (ECF No. 38).

### 4. *Post Sentencing Matters*

Defendant Norman did not appeal his conviction or sentence. In the past, he has tried to reduce his sentence under Guideline Amendment 750 (ECF No. 40) and Guideline Amendment 782 (ECF No. 43). The Court concluded that Defendant Norman was ineligible for relief on both occasions. (ECF Nos. 42 & 51). Defendant then filed a Section 2255 action challenging his career offender status and invoking the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2251 (2015). In an Order dated September 25, 2017, the Court found *Johnson* was inapplicable to Defendant for several reasons and denied the motion. *Norman v. United States*, No. 1:16-cv-834 (W.D. Mich. Sept. 25, 2017) (ECF No. 9). Defendant did not appeal that decision.

According to the BOP, Defendant Norman is currently scheduled to be released from imprisonment on May 18, 2026.

### 2. **The Fair Sentencing Act of 2010**

A little more than a year after Defendant Norman was sentenced, Congress passed the Fair Sentencing Act of 2010, Pub L. No. 111-220, 124 Stat. 2372 (2010). The Fair Sentencing Act reduced the sentencing disparity between crack and powder cocaine offenses by increasing the amount of crack cocaine needed to trigger the mandatory minimums established in the Anti-Drug

---

which is below the mandatory minimum sentence then applicable to him. His guidelines would then have become 240 months under U.S.S.G. § 5G1.1(b).

Abuse Act of 1986. *United States v. Blewett*, 746 F.3d 647, 649 (6th Cir. 2013) (en banc); *see also Dorsey v. United States*, 567 U.S. 260, 263-64 (2012). More specifically, the Fair Sentencing Act increased the threshold quantity in 21 U.S.C. § 851(b)(1)(A)(iii) from 50 grams or more of crack cocaine to 280 grams or more. Fair Sentencing Act at § 2(a)(1). The Fair Sentencing Act also increased the threshold quantity in 21 U.S.C. § 841(b)(1)(B)(iii) from 5 grams or more of crack cocaine to 28 grams or more. Fair Sentencing Act at § 2(a)(2). Under the Fair Sentencing Act, therefore, in order to trigger the twenty years to life sentencing range of Section 841(b)(1)(A)(iii) with an 851 predicate, the offense would have to involve more than 280 grams of crack cocaine.

The changes made by the Fair Sentencing Act, however, were not retroactive. *Blewett*, 746 F.3d at 650.[4] Because Defendant Norman had been convicted and sentenced before the Fair Sentencing Act's enactment he was not, at that time, eligible for any relief.

3. ***The First Step Act of 2018***

On December 21, 2018, President Trump signed the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (the "First Step Act") into law. The First Step Act "modified prior sentencing law and expanded vocational training, early-release programs, and other programming designed to reduce recidivism." *United States v. Simmons*, 375 F. Supp. 3d 379, 385 (E.D.N.Y. 2019). In Section 404 of the First Step Act, Congress made the Fair Sentencing Act's statutory changes for crack cocaine offenses retroactive to defendants who were sentenced before August 3, 2010:

---

[4] In *Dorsey v. United* States, 567 U.S. 260 (2012), the Supreme Court determined that the Fair Sentencing Act applied to any defendant sentenced on or after August 3, 2010, regardless of when the offense occurred. Because Defendant Norman was sentenced before August 3, 2010, *Dorsey* did not provide him with a pathway to any relief.

6

SEC. 404. APPLICATION OF FAIR SENTENCING ACT.

(a) DEFINITION OF COVERED OFFENSE.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.

(b) DEFENDANTS PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

(c) LIMITATIONS.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

First Step Act of 2018, Pub. L. No. 115-319, § 404, 132 Stat. 5194 (2018).

Accordingly, defendants who were convicted before August 3, 2010 of a crack cocaine offense for which the Fair Sentencing Act reduced their statutory penalties are now eligible for consideration of a reduced sentence. First Step Act of 2018, Pub. L. No. 115-319, § 404(a), (b), 132 Stat. 5194 (2018). Whether to reduce the sentence of an eligible defendant is left to the sentencing court's discretion. *Id.* at § 404(c). No reduction is required.

## DISCUSSION

1. **Summary of the Court's Process**

In an earlier Order, this Court set out a two-step process for evaluating First Step Act motions. *See United States v. Boulding*, 379 F. Supp. 3d 646 (W.D. Mich. 2019). The first step is determining eligibility. In *Boulding* the Court concluded that "eligibility under the language of the First Step Act turns on a simple, categorical question: namely, whether a defendant's offense of conviction was a crack cocaine offense affected by the Fair Sentencing Act." *Id.* at 651. As applied to that case, this determination meant that the quantity of narcotics (whether admitted, found by a jury, or found by a court) did not factor into the question of eligibility. That is true here as well, but this case also presents issues relating to a defendant's career offender status and changes (or not) to the guideline range. Based on the Court's approach in *Boulding*, these questions do not affect the categorical eligibility determination. They simply inform the Court's discretionary call at the second step.

At that second step, a reviewing court evaluates the motion to determine whether it should exercise its discretion to reduce the eligible defendant's sentence. This calls for a determination of the scope of the relief available. Here the Court previously determined, and reaffirms here, that the First Step Act does not provide for a plenary-resentencing. *Id.* at 653; *see also United States v. Davis*, No. 07-CR-245S (1), 2019 WL 1054554, at *2 (W.D.N.Y. Mar. 6, 2019) (concluding the First Step Act does not provide for a plenary resentencing and that the defendant need not be present for a reduction in sentence); *United States v. Jones*, No. 2:05-CR-29-FL-1, 2019 WL 2480113, at *2 (E.D.N.C. June 11, 2019) (noting that under 18 U.S.C. § 3582(c) a court may not modify a term of imprisonment except for a narrow range of situations, including "to the extent otherwise expressly permitted by statute," 18 U.S.C. § 3582(c)(1)(B) and holding that "[t]he First

Step Act permits the court to impose a 'reduced sentence' and 'modify' the term of imprisonment under § 3582(c)(1)(B), but it does not 'expressly permit' full resentencing."). But as the Court has also remarked, "unlike earlier rounds of retroactive crack or other drug sentencing relief, the First Step Act does not impose any artificial or guideline limits on a reviewing court. These earlier rounds of retroactive reduction proceeded under 18 U.S.C. § 3582(c)(2) based on Sentencing Commission guideline reductions and were therefore subject to the limitations built into that section. The First Step Act is different. The Sentencing Commission has nothing to do with it." *Boulding*, 379 F. Supp. 3d at 653. This means, among other things, that career offenders like Defendant Norman who did not previously receive relief under the retroactive amendments may now be able to receive a reduced sentence, if the court exercises its discretion to do so. At this point the Court considers whether to reduce a sentence by looking at the factors set out in Section 3553(a), the revised statutory range under the Fair Sentencing Act, any amendments to the guideline range, and post-sentencing conduct. *Jones*, 2019 WL 248-113, at *2.

**2. Defendant Norman is Eligible for a Reduced Sentence**

Defendant Norman is eligible for consideration of a reduced sentence under the First Step Act, and the parties do not argue otherwise. Defendant Norman's offense was committed before the Fair Sentencing Act's enactment on August 3, 2010; he was further convicted under the enhanced penalties found in Sections 841(b)(1)(A)(iii); and those penalties were "modified by section 2 . . . of the Fair Sentencing Act of 2010[.]" He was, accordingly, convicted of a "covered offense." The categorical limitations in Section 404(c) also do not apply to Defendant Norman. His sentence was not "previously imposed or previously reduced in accordance" with the Fair Sentencing Act's amendments. And he has not previously moved to reduce his sentence under

9

Section 404 of the First Step Act. Accordingly, the Court concludes that Defendant is eligible under Section 404(a) for a reduced sentence under Section 404(b).

   3. **Scope of Relief**

In determining whether to exercise its discretion to reduce Defendant Norman's sentence, the Court begins with a guideline range comparison. The table below demonstrates the differences between the guideline calculation as it existed when Defendant Norman was originally sentenced in 2009 and the guidelines as they exist now, taking into account all intervening drug guideline amendments and the retroactive application of the Fair Sentencing Act.[5]

| Count 1 | Original Sentence | First Step Act |
|---|---|---|
| Base Offense Level<br><br>*103.18 grams of cocaine base* | Level 30 (§ 2D1.1(c)(5)) (2008)<br><br>*At least 50 G but less than 150 G of Cocaine Base* | Level 24 (§ 2D1.1(c)(8)) (2018)<br><br>*At least 28 G but less than 112 G of Cocaine Base* |
| Adjustments for Role in Offense<br><br>*organizer, leader, manager or supervisor* | +2 levels (§ 3B1.1(c) (2008)) | +2 levels (§ 3B1.1(c) (2008)) |
| Adjustments for Acceptance of Responsibility | -3 levels (§ 3E1.1(a) & (b)) | -3 levels (§ 3E1.1(a) & (b)) |
| Total Drug Offense Level (After Acceptance) | Level 29 | Level 23 |
| Statutory Penalty | 20 years to Life<br><br>*Section 841(b)(1)(A)(iii) + 1 felony drug offense* | 10 years to Life<br><br>*Section 841(b)(1)(B)(iii) + 1 felony drug offense* |
| Chapter Four Enhancement (After Acceptance) | Level 34 (§ 4B1.1(b)(A)) (2008)<br><br>*Maximum Life Penalty* | Level 34 (§ 4B1.1(b)(1)) (2018)<br><br>*Maximum Life Penalty* |

---

[5] The government states that when a defendant qualifies for a reduction under the First Step Act, it will not object to further consideration under Section 3582(c)(2) of motions to reduce a sentence under the retroactive guideline amendments. From a judicial efficiency standpoint, the Court's analysis uses these amendments without requiring a separate motion. The guideline range is not a constraint, in any event.

| Total Offense Level | Level 34 | Level 34 |
|---|---|---|
| **Criminal History w/out Career Offender Enhancement** | Category IV | Category IV |
| **Criminal History with Career Offender Enhancement** | Category VI | Category VI |
| **Guideline Range Before Consideration of Career Offender Status** | 121 to 151 months on the chart; 240 months under U.S.S.G. § 5G1.1(b) | 70 to 87 months on the chart; 120 months under U.S.S.G. U.S.S.G. § 5G1.1(b) |
| **Guideline Range After Consideration of Career Offender Status & Statutory Provisions** | 262 to 327 months | 262 to 327 months |
| **Guideline Range After Consideration of Career Offender Status & Statutory Provisions w/ Departure to CHC V** | 235 to 293 months on the chart; 240 to 293 months with mandatory minimum | 235 to 293 months on the chart. |

As the above chart demonstrates, Defendant Norman's guideline range has not been reduced. This is because his sentence continues to be driven by his career offender status, and the maximum statutory penalty used to determine that offense level remains the same—life. Neither side disputes that the penalty range in Section 841(b)(1)(B) now applies to Defendant Norman because the amount involved in the offense, approximately 103 grams of crack, is less than the 280 grams now necessary to trigger those penalties.[6] But because of Defendant Norman's prior felony drug offense, the maximum penalty range under both Section 841(b)(1)(A)(iii) and Section 841(b)(1)(B)(iii) is the same. Accordingly, the career offense level applicable to Defendant

---

[6] Elsewhere, this Court has rejected the government's argument that a defendant is ineligible for relief if the record, including judge found facts, contains an amount sufficient to trigger the original penalty provisions. The Court need not probe any further into the issue here because, even if the government is correct that judge found facts may be used, the amount in this case is not sufficient to trigger the original penalty provisions.

Norman also is unchanged, and that offense level continues to take precedence when computing Defendant Norman's guideline range.[7]

After its review of the record, including Defendant Norman's post-sentencing behavior, the Court elects to exercise its discretion to reduce Defendant Norman's sentence. To be sure, Defendant's guideline range has not changed, as the government points out. Moreover, Defendant's existing sentence is below the guideline range. This does not disqualify Defendant from a further reduction, in the Court's discretion.

The Court discerns several reasons for imposing a reduced sentence under the First Step Act. Indeed, while the guideline range has not changed, several other considerations have. The mandatory minimum sentence, for one thing, is now ten years, rather than twenty. Previously this Court sentenced Defendant to twenty years imprisonment, the lowest it could go under the statute at the time. The First Step Act now permits the Court to exercise the full range of its discretion consistent with the Section 3553(a) factors. Additionally, the spread between the drug offense level and the career offense guideline has grown. Whereas before there was a span of 111 months

---

[7] In arguing for a plenary resentencing, the defense suggests that the Court should apply the new "serious drug felony" definition in Section 401(a) of the First Step Act. The defense contends that if he were to be sentenced today, Defendant Norman would not have a qualifying predicate offense for purposes of Section 851. (ECF No. 60, PageID.209). Absent the Section 851 notice, Defendant's statutory penalty range would be a minimum of five years and a maximum of forty years imprisonment. Defendant's total offense level also would be 31, after acceptance, given the maximum penalty of 40 years. *See* Section 4B1.1(b)(2). An offense level of 31 and Criminal History Category of VI results in a guideline range of 188 to 235 months on the chart, or 168 to 210, accounting for the 1 level departure in the criminal history category. Even this, the defense contends, is excessive, and it suggests the Court should vary downward to a guideline range of 70 to 87 months—the range accounting for the intervening guideline amendments absent the career offender enhancement and without the predicate Section 851 offense triggering the enhanced statutory penalties. The most natural reading of Section 401 of the First Step Act, however, is that it is not retroactive. *See* First Step Act of 2018 § 401(c). This reason, along with the Court's determination that the First Step Act does not provide for a plenary resentencing, leads the Court to decline to revisit Defendant Norman's Section 851 notice and so no hearing on the matter is necessary. The issues may still properly inform the Court's discretion.

between the high end of the drug guideline and the lower end of the career offender guideline, that spread is now 175 months. Moreover, the Court original found reason for a formal downward departure on criminal history. Based on these factors and all other matters of record, the Court determines to reduce Defendant Norman's sentence to 120 months imprisonment, but not less than time served. All other terms of the original sentence remain unchanged.

This sentence reflects the purposes of sentencing, including the seriousness of the offense, deterrence to others, protecting the public, respect for the law, and providing rehabilitative opportunities. It also balances the competing considerations implicated by guideline changes and intervening legal changes. With respect to his post-sentencing behavior, the probation officer has provided a report from the Bureau of Prisons reflecting minimal disciplinary infractions and several completed educational programs. The First Step Act now permits the Court to impose a reduced sentence that, in the Court's mind, is the more consistent outcome after a consideration of this and all the 3553 factors.

The docket reflects that Defendant Norman was arrested on November 24, 2008. (ECF No. 6) and he appears to have been in continuous marshal or BOP custody since then, a period of more than 120 months. Accordingly, the Court rules that the reduced sentence will be for no less than time served. *See United States v. Laguerre*, No. 5:02-cr-30098-3, 2019 WL 861417, at *3-*4 (W.D. Va. Feb. 22, 2019) (declining, under First Step Act, to reduce a sentence to less than time served because the need to protect the public and for deterrence directs that a defendant not be allowed to "bank time."). Moreover, the Court will further Order that this decision take effect ten days from the date of this Opinion in order to permit the Bureau of Prisons to complete certain administrative requirements.

**CONCLUSION**

Defendant Norman's pro se motion for modification or reduction of sentence under the First Step Act (ECF No. 55) is granted to the extent detailed in this Opinion, and his term of imprisonment reduced to a total term of 120 months imprisonment, but not less than time served. All other terms of the original sentence, including the ten years of supervised release, remain unchanged.

A separate Order consistent with this Opinion shall issue.


Dated:    July 23, 2019                    /s/ Robert J. Jonker
                                              ROBERT J. JONKER
                                              CHIEF UNITED STATES DISTRICT JUDGE